**Darin D. Honn, OSB No. 882279**
dhonn@sussmanshank.com
**Kristen G. Hilton, OSB No. 151950**
khilton@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR  97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130

Attorneys for Webatory, Inc.

## UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON
### PORTLAND DIVISION

| | |
|---|---|
| **WEBATORY, INC.,** an Oregon corporation, | Case No. |
| Plaintiff, | **COMPLAINT FOR** |
| v. | (1) Breach of Contract |
| | (2) Quantum Meruit |
| **MILLER MENDEL, INC.,** a Washington corporation, | (3) Unjust Enrichment |
| Defendant. | DEMAND FOR JURY TRIAL |

## PARTIES

1.      At all relevant times, Plaintiff Webatory, Inc. ("Plaintiff" or "Webatory") was

and is a corporation organized and existing under the laws of the State of Oregon.

2.      At all relevant times, Defendant Miller Mendel, Inc. ("Defendant" or "Miller

Mendel") was and is a corporation organized and existing under the laws of the State of

Page 1 –COMPLAINT

Washington, with its principal place of business at 1425 Broadway, #430, Seattle, Washington 98122.

3.      Miller Mendel creates, sells and supports software technology solutions for city, county, state and federal public agencies, including the eSOPH application. Webatory is informed and believes, and thereon alleges, that Miller Mendel's clients include the Clackamas County Sheriff's Office, in Clackamas County, Oregon, and the Oregon Department of Corrections.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this matter based on diversity of citizenship, 28 U.S.C. § 1332, in that Webatory and Miller Mendel are citizens of different states and the amount in controversy exceeds $75,000.

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because Webatory resides in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

6.      This Complaint has been filed in the Portland Division pursuant to Local Rule 3-2, because a substantial part of the events or omissions giving rise to the claims occurred in Multnomah County, Oregon.

## FACTUAL BACKGROUND

7.      On or about April 5, 2012, Webatory and Miller Mendel entered into a Services Agreement (the "Agreement") pursuant to which Webatory (identified as the "Developer") agreed to provide and Miller Mendel (identified as the "Client") agreed to pay for consulting, web application support, and application maintenance services.  A true

Page 2 – COMPLAINT

and correct copy of the Agreement and Exhibit A thereto is attached as Exhibit 1, and incorporated by reference herein.

8.      The Agreement provides that "Customer shall pay Developer the rates set forth in the Developer's 2012 Billing Rates (See Exhibit A) for the performance of the Services, together with reimbursement for any of Developer's direct costs."   The Agreement further states that "[s]ervices will be billed on a bi-monthly basis and sent to an email address designed by Client, and charged to the Client's account, subject to the terms thereof."   In addition, the parties agreed that "[a]ny outstanding balance is subject to 1.5% monthly interest (18% APR), compounded monthly."   *See* Exhibit 1.

9.      At the time that the parties entered into the Agreement, Miller Mendel's eSOPH application existed and was used by a single, large-use client.  Webatory took over management, programming, and maintenance duties for eSOPH from another developer.  Webatory is informed and believes, and thereon alleges, that the developer for whom Webatory took over had designed and built the eSOPH application in 2011.

10.      On or about December 7, 2012, Webatory and Miller Mendel executed a First Amendment to Services Agreement ("First Amendment").  The First Amendment did not modify any of the payment or interest terms in the Agreement.  However, the First Amendment did add a "Governing Law and Venue" provision, which states that "the amended and initial agreement shall be governed and construed in accordance with the laws of the United States and the State of Oregon, and the parties consent to the sole and exclusive jurisdiction of the state courts and U.S. federal courts having jurisdiction in Multnomah County, Oregon for any dispute arising out of either agreement."

Page 3 –COMPLAINT

11.     The First Amendment also conditioned Developer's (Webatory) delivery of requested work product on receipt of payment of any previously agreed to amount for the deliverable(s).

12.     In late 2013, the parties verbally agreed that Webatory would no longer provide services on a project basis, and that all future services provided by Webatory would be paid at the rate of $65 per hour instead of the rates listed in Exhibit A to the Agreement.  The parties' verbal agreement did not modify any other terms of the Agreement or the First Amendment.

13.     On or about May 8, 2014, Webatory and Miller Mendel executed a Second Amendment to Services Agreement ("Second Amendment").  The Second Amendment did not modify any of the payment or interest terms previously agreed to by the parties.

14.     Webatory performed services for Miller Mendel from approximately June 2012 until October 2015.  Those services include programming, consulting, managing the cloud environment for Miller Mendel's eSOPH application, hosting the eSOPH application in Webatory's own environment for a period of time, responding to customer technical issues, troubleshooting multiple network environments/platforms, and attempting to communicate requirements to offshore developers.  All services were performed at the direction of or under the supervision of MMI.

15.     All work performed by Webatory after April 5, 2012 was under the Agreement or an amendment or agreed-to modification regarding the scope of the work to be performed under the Agreement.  Webatory invoiced Miller Mendel for those services.  During the course of the parties' relationship, Miller Mendel never objected to the quality of Webatory's work or Webatory's hourly rate.

Page 4 –COMPLAINT

16.     Miller Mendel did not object to Webatory's invoices or question any of the charges thereon until November 2014, when Miller Mendel commented that the hours invoiced for July 2014 seemed like a lot.  The objection was resolved at that time following discussion between the parties.

17.     Since January 2014, Miller Mendel has made only partial payment to Webatory for the services performed and invoiced.

18.     In or around December 2014 and January 2015, Webatory and Miller Mendel agreed to modify the payment terms of their agreement.  Webatory agreed to accept payment from Miller Mendel in the amount of $7,000 per month, to be received on or about the 1st of each month.  In exchange, Webatory agreed to perform 35 hours of work per week for Miller Mendel, with the understanding that Miller Mendel would pay down the balance owed to Webatory when Miller Mendel signed up larger client accounts. Miller Mendel represented to Webatory that larger payments to reduce that balance would be imminent.  The parties also implicitly agreed that Webatory would continue to bill Miller Mendel at Webatory's hourly rate and that interest charges would continue to accrue on the unpaid balance.  As of January 1, 2015, the outstanding balance owed to Webatory was approximately $70,964.30.

19.     On January 7, 2015, Miller Mendel made the first payment of $7,000 pursuant to verbal agreement described in paragraph 18.

20.     Miller Mendel has not made any payment to Webatory since September 1, 2015.

21.     Webatory has continued to send Miller Mendel monthly statements showing the amount of unpaid invoices and monthly accruing interest.  As recently as October

Page 5 –COMPLAINT

2015, Miller Mendel acknowledged the amounts owed and represented to Webatory that it was expecting to repay Webatory starting the following month.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

22.    Webatory realleges and incorporates by reference paragraphs 1 through 21 of the Complaint.

23.    Webatory has performed all of its obligations under the Agreement and all amendments thereto, and all conditions precedent to Webatory's claim, if any, have been performed or discharged.

24.    Miller Mendel has failed to perform its obligations under the Agreement, and is in default by reason of its failure to pay Webatory's invoices as each became due.

25.    The total principal amount due on Webatory's invoices is $93,927.55, plus accrued interest at the rate of one and one-half percent (1.5%) in the amount of $15,920.90 through January 15, 2016, together with accruing interest at the rate of one and one-half percent (1.5%) per month from January 16, 2016, until paid.  A true and correct copy of the most recent statement dated January 15, 2016, which reflects all invoiced amounts for the months at issue, is attached as Exhibit 2 and incorporated by reference herein.

26.    Despite demand, Miller Mendel has failed and refused to pay the balance due and owing to Webatory.

27.    As a result of the allegations above, there is now due and owing to Webatory on the Agreement by Miller Mendel, after credits for all payments made, the principal sum of $93,927.55, plus accrued interest in the amount of $15,920.90 through January 15,

Page 6 –COMPLAINT

2016, together with accruing interest at the rate of one and one-half percent (1.5%) per month from January 16, 2016, until paid.

## SECOND CLAIM FOR RELIEF

### (Quantum Meruit)

28.     Webatory realleges and incorporates by reference paragraphs 1 through 21 of the Complaint.

29.     Between December 2014 and October 2015, Miller Mendel received services provided by Webatory, including, but not limited to, programming and consulting.

30.     Miller Mendel received benefit from services performed by Webatory for the benefit of Miller Mendel.  Miller Mendel requested said services and explicitly or implicitly agreed to pay for such services and costs incurred.

31.     Despite demand, Miller Mendel has failed and refused to pay Webatory in full for the services Webatory performed.

32.     Webatory is entitled to obtain recovery from Miller Mendel, the principal sum of $93,927.55, along with interest at the legal rate of nine percent (9%) per year from the time when each invoice stated in Exhibit 2 became due and owing until paid.

## THIRD CLAIM FOR RELIEF

### (Unjust Enrichment)

33.     Webatory realleges and incorporates by reference paragraphs 1 through 20, and 27 through 31 of the Complaint.

34.     If Miller Mendel is allowed to receive benefit from the services provided by Webatory without paying for the same, Miller Mendel will be unjustly enriched at the expense of Webatory.  As a result, there is now due and owing from Miller Mendel to

Page 7 –COMPLAINT

Webatory the principal sum of $93,927.55, plus interest thereon at the rate of nine percent (9%) per year from the date each invoice stated in Exhibit 2 became due and owing until paid.

WHEREFORE, Plaintiff prays for relief as follows:

1.     On Plaintiff's First Claim for Relief, for judgment against Miller Mendel in the principal amount of $93,927.55, plus accrued interest in the amount of $15,920.90 through January 15, 2016, together with accruing interest at the rate of one and one-half percent (1.5%) per month from January 16, 2016, until paid;

2.     On Plaintiff's Second Claim for Relief, to the extent not satisfied in its First Claim for Relief, for judgment against Miller Mendel in the principal amount of $93,927.55, plus interest thereon at the rate of nine percent (9%) per year from the date each invoice became due and owing until paid;

3.     On Plaintiff's Third Claim for Relief, to the extent not satisfied in its First or Second Claims for Relief, for judgment against Miller Mendel in the principal amount of $93,927.55, plus interest thereon at the rate of nine percent (9%) per year from the date each invoice became due and owing until paid;

4.     For Plaintiff's costs and disbursements incurred herein; and

5.     For any other relief the court deems just and equitable.

DATED this 18th day of February, 2016.

SUSSMAN SHANK LLP

By:   _/s/ Kristen G. Hilton_____
        Kristen G. Hilton, OSB No. 151950
        Darin D. Honn, OSB 882279
        Attorneys for Plaintiff

Page 8 –COMPLAINT